# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

|  |  |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, | Civil Action No. 1:21-cv-00069-BKE |
| Plaintiff, |  |
| v. |  |
| BKJ EXPRESS, LLC and TRANS-TECH AUTO, INC., |  |
| Defendants. |  |

## <u>DEFENDANT TRANS-TECH AUTO, INC.'S MOTION TO DISMISS</u>

Fredric J. Bold, Jr.
Megan E. Cambre
**BONDURANT MIXSON & ELMORE, LLP**
1201 West Peachtree St., NW, Suite 3900
Atlanta, Georgia 30309
Tel: 404-881-4100
Fax: 404-881-4111
*bold@bmelaw.com*
*cambre@bmelaw.com*

***Attorneys for Defendant Trans-Tech Auto, Inc.***

#3219130v1

This case cannot proceed against Defendant Trans-Tech Auto, Inc. ("Trans-Tech") because the Court lacks personal jurisdiction over this out-of-state defendant. As a nonresident business with no Georgia presence, Trans-Tech is certainly not subject to the general jurisdiction of Georgia courts.  Nor do Georgia's long-arm statute or Constitutional Due Process protections permit the Court to exercise specific personal jurisdiction over Trans-Tech.

This case involves a trucking incident and auto-recovery services that occurred exclusively in Virginia.  After Defendant BKJ Express, LLC's ("BKJ") tractor and trailer overturned on the side of the interstate, Trans-Tech, a Virginia-based towing company, recovered the vehicles and transported them to its storage facility in Virginia, where both remain today.  BKJ has since refused to satisfy its obligation to pay Trans-Tech for that work.

After months of incurring fees to store the tractor and trailer at its facility without sufficient payment, Trans-Tech's Virginia-based counsel sent a demand letter to BKJ, a Georgia company.  Trans-Tech's counsel also sent a copy of the demand letter to BKJ's insurance provider in Texas.  BKJ did not pay the outstanding balance.  Trans-Tech then sued BKJ in Virginia.  Only after that point did Plaintiff United Specialty Insurance Company ("United") file this declaratory judgment action against both Trans-Tech and BKJ in the United States District Court for the

1

Southern District of Georgia.

This Georgia-based Court has neither general nor specific personal jurisdiction over a Virginia-based company whose only contact with the State of Georgia was that its counsel sent a demand letter to a delinquent payor in Georgia. Thus, under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), and for the reasons below, Trans-Tech moves this Court to dismiss all claims asserted against Trans Tech in Plaintiff's First Amended Complaint.  Dkt. 11.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Trans-Tech is a small family-owned business incorporated and based in Broadway, Virginia.  Ex. 1 ¶ 3 (Decl. of Heather Stroop).  Trans-Tech provides auto services to the Shenandoah Valley of Virginia, including towing, recovery, and road-side assistance.  *Id.* at ¶ 4.  Its primary business is towing vehicles in Virginia and storing and servicing those vehicles at its facility in Virginia.  *Id.*  This case is about services performed by Trans-Tech for a trucking incident that occurred exclusively in Virginia.  In January 2020, a BKJ driver in a BKJ-owned tractor and trailer crashed in a single-vehicle turnover accident while driving north on I-81 in Rockingham County, Virginia.  Dkt. 11 ¶ 18; Dkt. 11-1 ¶¶ 5-6.  Pursuant to Virginia

---

[1] The dismissal of Trans-Tech will not prevent United from pursuing its claims against its policyholder Defendant BKJ Express, LLC, a Georgia-based company.

Case 1:21-cv-00069-JRH-BKE   Document 20   Filed 06/22/21   Page 4 of 22

law, the Virginia State Police contacted Trans-Tech, a Virginia-certified towing company, to retrieve and remove BKJ's overturned tractor and trailer from the side of the road.  Dkt. 11-1 ¶ 8.  Trans-Tech towed the tractor and trailer, full of cargo, back to its lot in Rockingham County, Virginia, where both remain today.  *Id.* ¶¶ 8-11.

To date, Trans-Tech's work in retrieving and storing the crashed truck and trailer have gone largely uncompensated.  Since January 13, 2020—nearly a year and a half ago—Trans-Tech has been storing the tractor at a cost of $90.00 per day and the trailer at a cost of $115.00 per day.  Despite being owed for those services, Trans-Tech has received just one payment of $10,000 from one of BKJ's other insurers.  Dkt. 11 ¶ 24.

BKJ's unjustified failure to pay Trans-Tech for the services that BKJ received forced Tran-Tech to seek to recover those unpaid fees in Virginia state court.   Dkt. 11 ¶ 25; Dkt. 11-1 at 4.[2]  That Virginia lawsuit seeks to enforce the statutory lien provisions of the Virginia Code and asserts unjust enrichment under Virginia state law.  Dkt. 11 ¶¶ 25-26; Dkt. 11-1 at 4-5.  Trans-Tech filed the Virginia lawsuit in March 2021, and it remains pending today.

---

[2] *See Trans-Tech Auto, Inc. v. BKJ Express, LLC*, No. 21-736 (Rockingham Cty., Va., Mar. 2021).

3

As the underlying trucking incident itself and the lawsuit to recover funds for Trans-Tech's towing and storage services all occurred exclusively in Virginia, how does United try to manufacture a Georgia connection to hail Trans-Tech far from home into this Georgia Court?  The *only* factual allegation of any connection to Georgia by Trans-Tech is that over a year after the accident, Trans-Tech's Virginia-based counsel sent a demand letter to BKJ's office in Georgia seeking payment for the overdue and accumulating bills.  Dkt. 11 ¶ 3; Dkt. 11-3 at 2.  Trans-Tech's attorney also sent a courtesy copy of the letter to the offices of BKJ's listed-insurance provider, United Specialty Insurance Company, in Texas and to BKJ's insurance broker.  Dkt. 11 ¶ 3; Dkt. 11-3 at 2-3.  BKJ took no action as a result of the demand letter sent to its Georgia office: BKJ sent no response to Trans-Tech in Virginia and evidently demanded no coverage from United.  Dkt. 11 ¶ 4.  Instead, United responded by letter to Trans-Tech's counsel, asserting that the policy between BKJ and United did not provide coverage for Trans-Tech's claim for towing, recovery, and storage.  Dkt. 11 ¶ 27; Dkt. 11-4 at 2-3.  After Trans-Tech sued BKJ in Virginia to recover unpaid fees, United sued Trans-Tech and BKJ in this declaratory judgment action, seeking a declaration of its rights under the Commercial Automobile and Motor Carrier Insurance Policy issued to BKJ.  Dkt. 11 ¶ 1. United's amended complaint tries to satisfy the personal jurisdiction requirement

4

through just one weak and threadbare allegation: United says that "[b]y sending the Demand that forms the basis of this action to BKJ," "Trans-Tech transacted business in the state of Georgia and established sufficient minimum contacts in the state of Georgia." *Id.* ¶ 13.

As United admits, Trans-Tech is not an insured and is not a party to the policy between United and BKJ.  Dkt. 11-4 at 2.  Trans-Tech also does not seek to enforce a Georgia-based contract.  Dkt. 11-8 at 2.  Trans-Tech is not licensed or authorized to do business in Georgia.  Ex. 1 ¶ 6.  Trans-Tech is not licensed by the State of Georgia to perform non-consensual towing.  *Id.*  Trans-Tech is not a member of the industry-association groups in Georgia.  *Id.*  Trans-Tech does not have a storage facility in Georgia.  *Id.* ¶ 5.  Trans-Tech does not have offices in Georgia.  *Id.*  Trans-Tech does not advertise itself as providing services in Georgia.  *Id.* ¶ 7.  Trans-Tech does not solicit clients in Georgia.  *Id.*  And Trans-Tech does not act through any agents or third parties in Georgia.  *Id.* ¶ 5.

All of that is because Trans-Tech is a Virginia-based business that does not transact business in Georgia.

## ARGUMENT

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no

meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation marks omitted).  A federal court sitting in diversity may exercise personal jurisdiction only "to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

The Court should dismiss Trans-Tech from this action because this Georgia Court lacks personal jurisdiction over Trans-Tech.  Federal courts can only exercise jurisdiction over a person if they possess either general or specific jurisdiction, and neither basis for personal jurisdiction over Trans-Tech exists here.  As the plaintiff, it is United's burden to establish that the Court has personal jurisdiction over Trans-Tech, and it has failed to do so.  *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction").

## I.  Because Trans-Tech is not "at home" in Georgia, it is not subject to general jurisdiction in Georgia.

General jurisdiction exists only when a defendant is "essentially at home" in the State.  *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017,

1024 (2021).  "Only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction."  *Id.* (quotations omitted).  For a corporation, those affiliations are readily identifiable, such as the state of incorporation and the state where its principal place of business is located.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Trans-Tech is a foreign corporation.  As the Complaint concedes, "Trans-Tech is a citizen of Virginia."  Dkt. 11 ¶ 9.  Trans-Tech is incorporated in Virginia and its principal place of business is in Broadway, Virginia.  Ex. 1 ¶ 3.

Nor is this the sort of "exceptional" case in which a corporation's informal contacts with a forum are substantial enough to subject it to jurisdiction over a claim unrelated to those contacts.  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).  United's amended complaint contains no allegations that Trans-Tech's affiliations with Georgia are so "continuous and systematic" as to render it at home in Georgia.  Trans-Tech is not registered to do business in Georgia.  *Id.* ¶ 6.  Trans-Tech does not have an office or agents in Georgia.  *Id.* ¶ 5.  Trans-Tech does not have an ongoing relationship with the State of Georgia, nor has it sought to solicit or market itself to Georgia residents.  *Id.* ¶ 7. The contact, if any, that Trans-Tech had with Georgia, through BKJ or otherwise, does not play "a significant role in its operations" nor does it "closely approximate the activities that

7

ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205.

Because Trans-Tech is not at home in Georgia, it is not subject to general personal jurisdiction in Georgia, and this lawsuit cannot proceed against Trans-Tech on that basis.

## II. <u>There is no specific personal jurisdiction over Trans-Tech because Trans-Tech is not subject to the Georgia long-arm statute.</u>

Nor can United meet its burden to establish that the Court has specific personal jurisdiction over Trans-Tech. "A federal court sitting in diversity undertakes a two-step inquiry," "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257-58.

As relevant here, Georgia's long-arm statute provides that a court may exercise personal jurisdiction over a nonresident "as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section," "if in person or through an agent, he or she: (1) Transacts any business within this state." O.C.G.A. § 9-10-91. United has failed to satisfy the statutory requirements for an exercise of personal jurisdiction under Georgia's long-arm statute because Trans-Tech did not transact any business in Georgia and because

8

United's claims do not arise from Trans-Tech's purported actions in Georgia.

### A.   <u>Trans-Tech did not transact business in Georgia.</u>

Georgia's long-arm statute requires that "an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Diamond Crystal Brands*, 593 F.3d at 1259.   One of those acts includes "[t]ransacts any business." *Id.* "Transacting business" requires that the "nonresident has purposefully consummated some transaction in this state." *Object Techs., Inc. v. Marlabs, Inc.*, 246 Ga. App. 202, 202 (2000).

But Trans-Tech has not "purposefully consummated some transaction" here. That's no surprise since Trans-Tech is a Virginia corporation that is not registered to do business in Georgia.   Trans-Tech is not licensed by the State of Georgia to perform non-consensual towing.   Ex. 1 ¶ 6.   Trans-Tech does not have a storage facility in Georgia. *Id.* ¶ 5.   Trans-Tech does not have offices in Georgia. *Id.* It does not advertise itself as providing services in Georgia. *Id.* ¶ 7.   Nor does it regularly act through agents or third parties in Georgia. *Id.* ¶ 5.   Its primary business is towing vehicles in Virginia and storing those vehicles at its storage facility in Virginia. *Id.* ¶ 4.

Knowing all this, United is forced to argue that a single demand letter sent by Trans-Tech's Virginia-based counsel to BKJ somehow subjects Trans-Tech to

jurisdiction in Georgia.  But it is absurd to conclude that sending one demand letter was a business transaction or that the letter alone "established sufficient minimum contacts."  Dkt. 11 ¶ 13.

First, such allegations reverse the relationship between Trans-Tech and BKJ. *BKJ* reached out and initiated contact with Virginia by sending its truck there.  Trans-Tech's business activity—the tow and storage of the tractor and trailer—occurred exclusively in Virginia.  Trans-Tech did not reach into Georgia to solicit or begin a business relationship with BKJ for services to be performed elsewhere.  The formation and consummation of the transaction occurred in Virginia.  "[C]ourts in this Circuit" have found personal jurisdiction "lacking where the Georgia plaintiff contacts the out-of-state defendant."  *Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106, 1114-15 (N.D. Ga. 1996).  The direction of the initial contact matters because when a nonresident entity markets itself to Georgia residents it benefits from the State of Georgia and her citizens.  But Trans-Tech had no choice or control over where to send this demand for payment for the business transaction that was continuing to occur in Virginia.  That Trans-Tech's customer happens to be located in Georgia does not evidence a transaction of business in Georgia.

For example, in *Intercontinental Services of Delaware, LLC v. Kent*, 343 Ga.

10

App. 567, 573 (2017), the Georgia Court of Appeals determined that an entity that performed cargo-unloading services at the Port of Wilmington did not transact business in Georgia even though one of its customers was based in Georgia. An entity that performs "site-specific service[s]" in another state is not automatically subject to jurisdiction in Georgia even when the business "involves or relates to products that will travel to Georgia." *Id.* at 572. So too here, Trans-Tech performed tow and storage services in Virginia; that the tractor and trailer are owned by a Georgia company does not automatically subject Trans-Tech to jurisdiction here.

Nor is Trans-Tech's business model one in which an out-of-state entity solicits business from customers around the country. Trans-Tech did not seek to perform services on behalf of BKJ—the Virginia State Police requested Trans-Tech to perform them.[3] Thus, Trans-Tech did not seek to establish a business venture with a Georgia resident or even to establish an ongoing business relationship with one. It merely seeks to collect payment for services performed in Virginia.

Second, the demand letter is not a business transaction. The Honorable J. Randal Hall of this District recently considered whether sending a demand letter

_____

[3] Virginia Code § 46.2-1212 authorizes Virginia police to have vehicles that would impede the orderly flow of traffic removed to a storage area for safekeeping. Under that law, "the owner [of the vehicle] shall pay to the parties entitled thereto all costs incidental to its removal and storage." Trans-Tech is also entitled to compensation under Virginia Code §§ 46.2-644.01 & 46.2-644.01(F).

constitutes a transaction of business under Georgia's law-arm statute.  The answer was clear: "[t]hose communications alone do not constitute a business transaction." *Hart Agric. Corp. v. Kea Invs. Ltd.*, CV 120-018, 2020 WL 7043478, at *1-3 (S.D. Ga. Oct. 29, 2020).   "[A] demand letter is naturally one-sided rather than transactional." *Id.*  Other courts agree.  *See, e.g.*, *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (concluding that plaintiff's "letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum" was not a transaction of business under New York's long-arm statute).

Indeed, Trans-Tech did not even send the demand letter as part of its business. It retained Virginia-based counsel, who sent the letter because of issues with BKJ's payment of an ongoing transaction in Virginia.

### B.   **The cause of action did not arise from any contact that Trans-Tech had with Georgia.**

Georgia's long-arm statute confers jurisdiction only "if the cause of action arises from that nonresident's transacting any business within the state."  *Stanton v. Harris*, 356 Ga. App. 554, 555 (2020).  The real source of United's cause of action arises from the interaction of the insurance policy and the underlying lawsuit in Virginia, not the demand letter sent to Georgia.  There is no link between the demand letter and BKJ's invocation of coverage from United.  The amended complaint recognizes as much, alleging that "[f]ollowing the Demand to BKJ, BKJ did not

make a demand for coverage from United."  Dkt. 11 ¶ 4.  United knew about the demand letter and is now seeking a declaration of its rights because Trans-Tech's counsel sent a courtesy copy of the demand letter to United's offices *in Texas*—not because the letter was sent to the insured's offices in Georgia.  *Id.* ¶ 3.  And United does not allege that the demand letter triggered coverage.  Instead, United alleges that "the claims asserted in the Underlying Action do not trigger coverage" and seeks declarations that United has no duty to "defend BKJ in the Underlying Action" and no duty to indemnify BKJ "for the Underlying Action."  *Id.* ¶¶ 57-58 & 66-67.  The demand letter sent to the insured's office in Georgia does not form the basis of this action.

United's amended complaint points to *Belle Terrace Presbyterian Church v. CC Recovery*, but that case doesn't help United at all.  No. CV 112-084, 2014 WL 317190, at *2 (S.D. Ga. Jan. 28, 2014).  Dkt. ¶ 13.  For one, *Belle Terrace* involved correspondence between a Georgia-based church and a debt-collection entity that was "lawfully authorized to conduct business in Georgia" and that "regularly conduct[ed] business in Georgia."  2014 WL 317190 at *2.  Neither of those critical facts applies to Trans-Tech.

*Belle Terrace* also did not involve a routine demand letter.  After being contacted by a directory company to renew a nonexistent listing and declining that

solicitation, the Georgia church received an email and two debt collection letters from the debt collector.  *Id.*  The Georgia church then sued the debt collector, alleging that it had violated the Fair Debt Collection Practices Act ("FDCPA") for seeking to collect a nonexistent debt.  *Id.*  The Court determined it could exercise jurisdiction over the nonresident debt collector because there were significant contacts between the debt collector and the Georgia resident and the cause of action arose directly from the solicitation and correspondence sent to that resident.  *Id.*   In a similar fashion, the Northern District of Georgia has held that demand letters from debt collectors suffice to establish specific jurisdiction under the FDCPA because the cause of action arises from the receipt of the letter and the collection efforts are at "the heart of defendant's business" rather than "merely means of conducting some other primary business."  *Bailey v. Clegg, Brush & Assocs, Inc.*, 1:90-CV-2702-CAM, 1991 WL 143461, at *2 (N.D. Ga. June 14, 1991).

But this situation is very different from the FDCPA cases.  While the demand letter relates to United's cause of action against its insured, it does not form the basis of United's declaratory judgment claim.  United's claim is that it has no obligation under its contract with BKJ to indemnify or provide a defense in the underlying Virginia action.  Unlike the debt collection process in which the plaintiff's claim arises when the tortious letter is sent into the State, United's claim did not arise

14

because the demand letter was sent into Georgia but because there was an unpaid business transaction in Virginia.  And, as discussed above, unlike a debt collector whose business model centers on demand letters, Trans-Tech's business model involves towing and auto services in Virginia.  The demand letter here was merely incidental to the business conducted in Virginia.

Since United's causes of action do not arise from Trans-Tech's alleged contact with Georgia, this Court lacks specific jurisdiction over Trans-Tech, and this lawsuit cannot proceed against Trans-Tech on that basis.

## III. Exercising specific personal jurisdiction would also violate Trans-Tech's Due Process rights.

The Due Process clause also protects Trans-Tech from being haled into court far from home.  This Court can only exercise jurisdiction over parties who have established "certain minimum contacts" with Georgia so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Diamond Crystal Brands*, 593 F.3d at 1267.  The single demand letter did not establish the constitutionally required minimum contacts with Georgia.  It was one-sided correspondence from Trans-Tech's Virginia-based counsel about delinquent payment on a Virginia transaction.  For Trans-Tech to be haled into a Georgia court based on that kind of cursory, one-off communication would grossly offend all notions of fair play and justice.

United's flawed view of personal jurisdiction would mean that every time a company sent an invoice or a letter to a Georgia-based individual or business for services performed elsewhere, that company could then be summoned into court in Georgia. United's contention that even if a business's services never exited its home state, that business could be forced to litigate in all 50 states merely based on the location of its customers eviscerates the foundational requirement of personal jurisdiction. In fact, that position gets the law exactly backwards. It reads out the touchstone of the due process analysis: whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474, 105 S. Ct. at 2183.

Trans-Tech cannot anticipate where its customers may ultimately be based. When the Virginia Police contacted Trans-Tech to recover the overturned tractor and trailer from the side of the road in Virginia, Trans-Tech did not know the residence of the driver. Ex. 1 ¶ 8. Nor did it know where the driver's company was based, or if the tractor and trailer belonged to the same owner, or the insurance arrangement between the owner and insurer. All Trans-Tech knew was that it was performing its routine business operations in Virginia. Trans-Tech never expected that those operations would get it haled into court in Georgia. Id. ¶ 18. That Trans-Tech could be drawn into court in Georgia (or any other forum) because it sent a demand letter

to the owner of property that continued to be left in its storage facility in Virginia defies logic and is not the law.

Indeed, "the vast majority of the courts have held that the nonresident defendant's action in sending a demand letter to the plaintiff is insufficient to create personal jurisdiction." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542 n.19 (5th Cir. 2019) (quoting *Thousand Trails, Inc. v. Foxwood Hill Prop. Owners Ass'n*, 1999 WL 172322, at *3 (N.D. Tex. Mar. 22, 1999)). The mailing of a demand letter alone does not create the constitutionally required minimal contacts because the sender does not seek to purposefully avail themselves of the benefits and protections of the forum state. *Id.*; *see also Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1377–79 (N.D. Ga. 2013) ("[T]he only jurisdictionally relevant contact . . . is the single license demand letter, which cannot alone justify the exercise of specific jurisdiction."). Trans-Tech's demand letter sought recovery of unpaid fees under Virginia law. Trans-Tech did not seek to invoke the benefits and protections of Georgia by sending a letter that purports to assert and enforce rights that exist under the laws of Virginia. "Principles of fair play and substantial justice afford a" rights holder "sufficient latitude to inform others" of those rights "without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co., Inc. v. Hockerson-*

17

*Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998).

Further, the Supreme Court has affirmed that due process protects nonresident entities from being haled into a forum over "random," "fortuitous," or "attenuated" contacts. *See Rudzewicz*, 471 U.S. at 475, 105 S. Ct. at 2183. The "unilateral activity" of another, such as the place where they receive mail, cannot sustain jurisdiction over one who has not availed themselves of that forum. *Id.* It is arbitrary and unfair to subject Trans-Tech to suit in Georgia just because that is where BKJ happened to be located.

Courts consider several other factors when a party attempts to hale an out-of-state defendant into court, none of which United can overcome: the "burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990). These factors strongly weigh against an exercise of jurisdiction here.

The burden of a Virginia-based towing company defending itself in an insurance coverage dispute between a Georgia resident and a Texas-based insurance company is high—especially when there is already a pending lawsuit over the same

incident in Virginia.  Trans-Tech is a small business, not a Fortune 500 company.

Ex. 1 ¶ 19.  Further, all potential witnesses and the documents relevant to the

underlying dispute in this action are housed in Trans-Tech's Virginia headquarters.

Ex. 1 ¶ 16-17.

The State of Georgia has no interest in adjudicating whether payment is due

to a Virginia-based towing company for services performed in Virginia.  And Trans-

Tech is also not a necessary party to a determination of insurance coverage between

United and its insured; complete relief can be granted in Trans-Tech's absence.

In addition, the interstate judicial system's interest in efficient resolution and

the shared interest of the states in furthering social policy cuts sharply against this

Court exercising jurisdiction over Trans-Tech.  As one federal Court of Appeals

recognized, there are "strong policy reasons" to encourage pre-suit dispute

resolution letters.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,

433 F.3d 1199, 1208–09 (9th Cir. 2006).  "If the price of sending" such a letter means

that the sender "subjects itself to jurisdiction in the forum of the alleged rights

infringer, the rights holder will be strongly encouraged to file suit in its home forum

without attempting first to resolve the dispute informally by means of a letter."  *Id.*

A recipient's state of residence has nothing to do with where the rights holder is

subject to suit.

## <u>CONCLUSION</u>

Trans-Tech cannot be sued in Georgia.  Because this Court lacks general jurisdiction over Trans-Tech and United has not come close to satisfying either the statutory or Constitutional prerequisites to specific jurisdiction, this Court should dismiss Trans-Tech from this lawsuit.

Respectfully submitted this 22nd day of June, 2021.

**BONDURANT MIXSON & ELMORE, LLP**

*/s/ Fredric J. Bold, Jr.*
Fredric J. Bold, Jr.
Ga. Bar No. 544604
Megan E. Cambre
Ga. Bar No. 167133 (admission pending)
1201 West Peachtree St., NW
Suite 3900
Atlanta, Georgia 30309
Tel: 404-881-4100
Fax: 404-881-4111
*bold@bmelaw.com*
*cambre@bmelaw.com*

***Attorneys for Defendant Trans-Tech Auto, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system and copies sent to all counsel of record via the ECMF system.

This 22nd day of June, 2021.

*/s/ Fredric J. Bold, Jr.*
Fredric J. Bold, Jr.
Georgia Bar No. 544604
*bold@bmelaw.com*

21